**APPLE CORPS LIMITED, MPL Communications, Inc., Yoko Ono Lennon As Executrix of the Estate of John Lennon, Subafilms, Ltd. and Yoko Ono Lennon, Plaintiffs,**

v.

**INTERNATIONAL COLLECTORS SOCIETY, John E. Van Emden, Scott L. Tilson, Jeffrey B. Franz and Howard E. Friedman, Defendants.**

Civ. No. 96–1571(JAG).

United States District Court,
D. New Jersey.

Nov. 18, 1998.

Paul V. LiCalsi, Amy J. Lippman, Gold, Farrell & Marks, New York, NY, David O. Marcus, Shapiro & Croland, Hackensack, NJ, for Plaintiffs.

Bradford J. Badke, Lindal L. Scott, Dewey Ballantine, LLP, New York, NY, Donald A. Robinson, Robinson, Lapidus & Livelli, Newark, NJ, for Defendants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the application for costs and attorneys' fees of Gold, Farrell & Marks, counsel for plaintiffs Apple Corps Limited, MPL Communications, Inc., Yoko Ono Lennon, as executrix of the estate of John Lennon, Subafilms, Ltd: and Yoko Ono Lennon (collectively "Plaintiffs"). The application is based on Plaintiffs' successful motion seeking the issuance of an order of civil contempt against the defendants.

### BACKGROUND

Plaintiffs commenced the above-captioned action against defendants International Collectors Society, John E. Van Emden, Scott L. Tilson, Jeffrey B. Franz and Howard E. Friedman (collectively "Defendants") in April 1996. Plaintiffs alleged that Defendants were unlawfully trading off the good will associated with the legendary rock-n-roll band, The Beatles. Specifically, Plaintiffs alleged that Defendants created, marketed and sold, without any authorization from Plaintiffs, postage stamps featuring images of The Beatles, trademarks and copyrighted

photographs that Plaintiffs owned and controlled.

In June, 1997, the parties agreed to resolve the case by a Consent Order which the Court entered on June 19, 1997. Paragraph O of the Consent Order provides:

> In the event that defendants or any of them breaches any provision of paragraphs A–I or K–L of this Order and as a result of such breach, plaintiffs or any one of them initiates legal proceedings to enforce their rights under this Order, ***defendants*** and each of them hereby: ... (3) ***agree to reimburse plaintiffs for all their costs, including reasonable attorney's fees incurred in connection with any successful action or proceeding brought by plaintiffs*** (or any one of them) ***to enforce their rights under this Order.***

(Consent Order ¶ O) (emphasis added).

On or about September 24, 1997, Plaintiffs brought a motion for contempt seeking to enforce the Consent Order. The Defendants filed a cross-motion to dissolve the Consent Order pursuant to Fed.R.Civ.P. 60(b) and a separate motion seeking to impose sanctions on Plaintiffs' counsel for alleged ethical violations in connection with their investigation of the contempt.

On June 26, 1998, this Court granted Plaintiffs' motion for contempt and denied Defendants' cross-motion to dissolve the Consent Order and their motion for sanctions.[1] In accordance with Paragraph O of the Consent Order, the Court ordered "that Defendants shall reimburse Plaintiffs for all their costs, including reasonable attorneys' fees incurred in bringing their motion for contempt." *Apple Corps Ltd. v. International Collectors Soc'y,* 15 F.Supp.2d 456, 477 (D.N.J.1998). On July 9, 1998, Plaintiffs filed the instant application for attorneys' fees and costs pursuant to Paragraph O of the Consent Order.

## DISCUSSION

■ Attorneys' fees and expenses may be awarded to a prevailing party in a federal litigation where authorized by statute, court rule or contract. *See Hatco Corp. v. W.R. Grace & Co.,* 801 F.Supp. 1309, 1333 (D.N.J. 1992), *vacated on other grounds,* 59 F.3d 400 (3d Cir.1995). The Court may also award fees and expenses "under the courts' inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt." *Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 941 (3d Cir.1995) (citing *Robin Woods Inc. v. Woods,* 28 F.3d 396, 400–01 (3d Cir.1994)); *see also Lichtenstein v. Lichtenstein,* 425 F.2d 1111, 1113–14 (3d Cir.1970), *modified,* 454 F.2d 69 (3d Cir. 1972). In the contempt setting, the "innocent party is entitled to be made whole for the losses it incurs as the result of the contemnors' violations, including reasonable attorneys' fees and expenses." *Halderman,* 49 F.3d at 941 (citing *Robin Woods,* 28 F.3d at 401). However, "these items are restricted to a reasonable amount incurred in prosecuting the petition" for contempt. *Lichtenstein,* 425 F.2d at 1113–14; *see also Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

## THE LODESTAR METHOD

■ "A reasonable [attorneys'] fee is one which is adequate to attract competent counsel, but which does not produce a windfall to attorneys." *Public Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995) (internal quotations and citations omitted). The Supreme Court has held that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The product of this calculation is called the lodestar. *Id.* at 434, 103 S.Ct. 1933. The lodestar is presumed to yield a reasonable fee. *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir.1996) (citing *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). However, the lodestar calculation requires that the court

---

**1.** Defendants have appealed this Court's findings. Their appeal is presently pending before the Third Circuit.

"carefully and critically evaluate the hours and the hourly rate set forth by counsel." *Blakey v. Continental Airlines, Inc.*, 2 F.Supp.2d 598, 602 (D.N.J.1998) (citations omitted).

■ The party seeking attorneys' fees has the burden of establishing the reasonableness of the fees by "submit[ting] evidence supporting the hours worked and the rates claimed." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). Thus, Plaintiffs' counsel "must produce satisfactory evidence—in addition to [their] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).[2]

■ The burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *See Rode*, 892 F.2d at 1183 (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 715 (3d Cir.1989)).[3] If the party opposing the fee petition meets its "burden of proving that an adjustment is necessary," *Rode*, 892 F.2d at 1183, the court has wide discretion to adjust the attorneys' fee for a variety of reasons such as inadequate documentation of hours spent, reasonableness of

hours expended or duplication of efforts. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) (citations omitted). However, the court may not "decrease a fee award based on factors not raised by the adverse party." *Rode*, 892 F.2d at 1183 (citations omitted).[4]

■ After computing the lodestar, the Court can make further adjustments to the fee "if the lodestar is not reasonable in light of the results obtained. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Rode*, 892 F.2d at 1183.

### A. Reasonableness of Hours Expended

■ In calculating the lodestar, the Court must determine whether the number of hours expended are reasonable. The party requesting attorneys' fees must provide evidence to support the time claimed. *See Windall*, 51 F.3d at 1188 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). The Court must consider a party's objections to particular time charges and exclude from compensation those hours which are not reasonably expended. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).

2. In addition, L. Civ. R. 54.2(a) requires that:
[A]n attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit ... setting forth the following:
(1) the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of services rendered;
(2) a record of the dates of services rendered;
(3) a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;
(4) the time spent in the rendering of each of such services; and
(5) the normal billing rate for each of said persons for the type of work performed.

3. If the party opposing the fee award does not meet this burden, the Court must award attorney's fees at the requested rate. *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).

4. However, "although [a] respondent's objections to the fee petition must be clear, a party challenging a fee petition need not always challenge specific time entries and have the court find that some specific time entry was unreasonable or unnecessary... It would be nearly impossible, or at least extraordinarily burdensome, for parties who wish to contend that the time spent by a fee applicant was excessive in light of counsel's expertise ... to point to all the entries that they believe to be unreasonable." *Bell*, 884 F.2d at 720. Thus, a defendant's objections are adequate, for example, if they allege that the hours spent on particular categories of work are excessive. *Id.*

Plaintiffs' lead counsel, Gold, Farrell & Marks ("Gold, Farrell") seeks $250,675.54 in attorneys' fees for three partners, Paul V. LiCalsi, Martin R. Gold and Jane G. Stevens, four senior associates, Amy J. Lippman, Jeannie Costello, Howard W. Weller and Michael Manuelian and three paralegals, Sari L. Harris, Mark B. Fallon and Tina Leos Termine. Counsel for Yoko Ono Lennon, Shukat, Arrow, Hafer & Weber, L.L.P. ("Shukat, Arrow"), seeks $15,805 in attorneys' fees for one partner, Dorothy M. Weber, and one associate Jonas E. Herbsman. Local counsel, Shapiro & Croland, seeks $7,128.75 in attorneys' fees for one associate, David O. Marcus.

Plaintiffs' fee application includes fees and expenses associated with defending against Defendants' motion for sanctions based on ethics violations and Defendants' cross-motion to dissolve the Consent Order. Paragraph O of the Consent Order, however, only entitles Plaintiffs to attorneys' fees incurred in connection with a "proceeding brought by plaintiffs ... to enforce their rights under this Order." Thus, neither the Consent Order nor this Court's Order dated June 26, 1998, entitle Plaintiffs to attorneys' fees and expenses incurred in connection with defending against Defendants' motions.

In response to the Court's request, Gold, Farrell, calculated the amount of time devoted to defending against both Defendants' cross-motion to dissolve the Consent Order and Defendants' motion for sanctions. Gold, Farrell has represented to the Court that 8.1 percent of the fees it incurred are related to defending against Defendants' cross-motion to dissolve the Consent Order and 6.7 percent of the fees are related to defending against Defendants' motion for sanctions. According to Gold, Farrell, the remaining 85.2 percent of the fees that it incurred are related to the contempt motion.

Defendants argue, and the Court agrees, that based on the voluminous briefs and Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Gold, Farrell's assertion that only 14.8 percent of its time was devoted to defending against Defendants' motions is not credible. Further, neither Shukat, Arrow nor Shapiro & Croland have provided the Court with the percentage of hours devoted to defending against Defendants' cross-motion to dissolve the Consent Order and Defendants' motion for sanctions. Therefore, this Court shall disregard Gold, Farrell's representations as to the percentage of hours it devoted to defending against Defendants' motions and shall make its own determination as to a proper percentage of hours Plaintiffs' counsel devoted to Defendants' motions based on Plaintiffs' fee application submissions.

### 1. Lack of Specificity

Defendants argue that the time entries Plaintiffs' counsel submitted are not specific enough to enable the Court to discern how many hours Plaintiffs' counsel devoted solely to the contempt motion as opposed to hours spent defending against Defendants' two motions. Therefore, Defendants argue, the Court should reduce Plaintiffs' counsel's hours by two thirds.

 Counsel seeking attorneys' fees must document the hours for which payment is sought with sufficient specificity "to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington*, 89 F.3d at 1037 (citing *Rode*, 892 F.2d at 1190). The fee petition must include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partner, junior partners, associates." *Id.* at 1037–38 (citation omitted); *see also Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir.1992). However, attorneys need not provide the Court with "the exact number of minutes nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Washington*, 89 F.3d at 1038 (citing *Rode*, 892 F.2d at 1190). Summaries showing the daily activities of each attorney and paralegal, the hours consumed and a general description of the tasks performed are sufficient to meet the standards of specificity. *See Keenan*, 983 F.2d at 473.

In support of their fee petition, Plaintiffs submitted the time records of each attorney and paralegal who worked on the litigation specifying the date when the work was done, the nature of the task (e.g., drafting reply brief), the amount of time spent on the tasks and the hourly rate charged. However, the time records do not segregate the hours and costs attributable to the contempt motion.[5]

The Third Circuit has rejected "a requirement that records be kept by task—e.g., for each motion, issue or part of the case." *Washington*, 89 F.3d at 1038 (citing *Rode*, 892 F.2d at 1189–90). In the instant case, some entries are specific enough to allow the Court to determine whether the hours were devoted to the contempt motion or to defending against Defendants' motions. However, as to the entries that list multiple tasks or which lack the specificity necessary for the Court to determine whether the hours were expended in connection with the contempt motion, the Court will disallow those hours. *See* Appendix A.

The Court will reduce or disallow the following hours as not expended in connection with the contempt motion:

| | | Hours Requested | Hours Deducted |
|---|---|---|---|
| Gold, Farrell: | Mr. LiCalsi | 248 | 62.75 |
| | Mr. Gold | .8 | .8 [6] |
| | Ms. Lippman | 438.4 | 106.2 |
| | Ms. Costello | 35.8 | 6.4 |
| | Mr. Weller | 18.9 | .50 |
| | Ms. Harris | 162.6 | 9 |
| | Ms. Termine | 8 | 2 |
| Shukat, Arrow: | Ms. Weber | 56.8 | 3.8 |
| | Mr. Herbsman | 2.25 | .75 |
| Shapiro & Croland: | Mr. Marcus | 34.9 | 2.2 |

---

5. For example, an entry reads as follows:

11/05/97 1.20 Drafting argument and research.

The entry does not specify, however, whether counsel's work was related to the contempt motion, in which case the hours are compensable, or whether the hours were expended in connection with defending against Defendants' motions, in which case the hours are not compensable. Another entry reads as follows:

10/31/97 7.20 Meetings with D. Weber, L. Ruggeri, J. Mitnick, J. Glick; research re: Rule 60(b) motion; teleconference with N. Aspinall.

The research on the cross-motion to dissolve the Consent Order (the Rule 60(b) motion) is not compensable. The meetings with D. Weber, L. Ruggeri, J. Mitnick and J. Glick (the investigators Plaintiffs' counsel hired to investigate whether Defendants were violating the Consent Order) are compensable because they are related to the motion for contempt. However, the record does not indicate how many hours of the 7.20 hours billed were devoted to research on the Rule 60(b) motion and how many hours were devoted to the meeting in connection with the contempt motion.

6. Mr. LiCalsi represented to the Court that Mr. Gold devoted this time to the motion for sanctions. Accordingly, the Court will disallow all of Mr. Gold's hours.

## 2. *Unnecessary*

In addition to reducing the requested hours for lack of specificity, the Court may also reduce the number of hours as "not reasonably expended if they are ... unnecessary." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).

### a. *Evidentiary Hearing*

 Defendants' counsel argues that Plaintiffs were not entitled to an evidentiary hearing, thus, they cannot recover attorneys' fees incurred in connection with preparation for and attendance at the hearing. However, it was the Court's decision to hold a hearing. This Court stated:

> Now, Mr. Badke, I've been looking at some of the Third Circuit cases on civil contempt, and also at the bench book, and the bench book says that the hearing will be by witness and not affidavit. And the Third Circuit cases certainly allude to hearings ... [T]here really does seem to be an implication as there will be live testimony.

Nov. 3, 1997 Tr. at 71:16–72:4.

Further, the Third Circuit has held that "a successful party proving contempt is entitled to recover," *inter alia,* the expense of "preparing for and conducting the contempt proceeding in addition to attorneys' fees." *Robin Woods*, 28 F.3d at 400. Thus, the time Plaintiffs' counsel spent preparing for and participating in the hearing was necessary and is therefore, recoverable.

### b. *Proposed Findings of Fact and Conclusions of Law*

 Defendants argue that the time spent by Plaintiffs' counsel preparing the Proposed Findings of Fact and Conclusions of Law was unnecessary because such submission was not required by law and Plaintiffs' counsel gratuitously suggested providing them to the Court. Even though the Court did not initially request Proposed Findings of Fact and Conclusions of Law, once Plaintiffs' counsel suggested them, the Court required them. Thus, the time Plaintiffs' counsel billed for preparing the portion of the Proposed Findings of Fact and Conclusions of Law which addressed the motion for contempt is recoverable.[7]

### c. *Mis-cites*

 Ms. Lippman spent 8.5 hours checking Mis-cites—cite checking Defendants' Proposed Findings of Fact and Conclusions of Law. It is not Plaintiffs' counsel's responsibility to check opposing counsel's cites. Thus, the Court will disallow the hours spent checking Defendants' cites as unnecessary.

### d. *Conferences with Co-counsel*

 Defendants argue that the Court must disallow numerous conferences between co-counsel, specifically meetings between Mr. LiCalsi and Ms. Lippman, and telephone conferences between Mr. LiCalsi and Ms. Weber or her partner, Mr. Shukat, because they were unnecessary. The Court disagrees. "Conferences between attorneys ... are necessary, valuable, and often result in greater efficiency and less duplication of effort, thus requiring fewer hours overall." *Stacy v. B.Q. Stroud*, 845 F.Supp. 1135, 1144 (S.D.W.Va.1993).

### e. *Subpoena*

Defendants object to the hours expended by counsel preparing a subpoena demanding a computerized listing of defendant International Collectors Society's members who belonged to the Beatles/Lennon Club.[8] This Court denied this discovery, therefore, the Court will disallow the hours billed in connection with the subpoena. The Court will deduct one hour from Ms. Lippman's requested hours and two hours from Mr. LiCalsi's requested hours as expended in connection with the subpoena. *See* Appendix A.

---

7. However, the Court shall disallow 50 percent of the hours Plaintiffs' counsel spent on the Proposed Findings of Fact and Conclusions of Law as expended in connection with defending against Defendants' motions. *See* Appendix A.

8. The Beatles/Lennon Club is comprised of people who had purchased Beatles or John Lennon stamps from Defendants and had agreed to allow Defendants to ship periodically new Beatles or Lennon stamps to them on a "keep or return basis".

### f. Four Attorneys at Evidentiary Hearing

Defendants contend that there was extensive duplication of legal services by Plaintiffs' counsel. The Court may eliminate hours as duplicative "only if the attorneys are unreasonably doing the same work." *Rode*, 892 F.2d at 1187. Defendants submit that the attendance at the evidentiary hearing of Ms. Weber[9] and Mr. Marcus was unnecessary since only Mr. LiCalsi and Ms. Lippman participated in the hearing. The Court agrees.

In certain cases, the attendance of additional counsel representing the same interests as the attorney actually participating in a hearing "is wasteful and should not be included in a request for counsel fees from an adversary." *Halderman*, 49 F.3d at 943 (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933). Many courts have held that there is no need for even two attorneys to attend court proceedings such as a hearing if only one attorney is participating in the proceeding. *See Schofield v. Trustees of the Univ. of Penn.*, 919 F.Supp. 821, 829 (E.D.Pa.1996); *Student Public Interest Research Group of New Jersey v. Monsanto Co.*, 721 F.Supp. 604, 611–12 (D.N.J.) (finding that plaintiff did not require two attorneys to conduct depositions and to conduct the trial), *modified on other grounds*, 727 F.Supp. 876 (D.N.J.), *aff'd*, 891 F.2d 283 (3d Cir.1989) (Table), *overruled on other grounds by Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179 (3d Cir.1995);[10] *Blakey*, 2 F.Supp.2d at 604 ("where three attorneys are present at a hearing where one would suffice, compensation should be denied for the excess time.") (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980)); *Daggett v. Kimmelman*, 617 F.Supp. 1269, 1281 (D.N.J. 1985).

Neither Ms. Weber nor Mr. Marcus questioned any witnesses. Except for Ms. Weber's testimony on the first day of the evidentiary hearing, Mr. Marcus' and Ms. Weber's presence at the hearing was unnecessary. Although a private client may pay the additional fee to have all the attorneys attend a hearing, even if they are not actively participating, this practice is not necessarily reasonable when the extra expense will be borne by the other party to the proceedings. *See Halderman*, 49 F.3d at 943.

Local Civil Rule 101.1(c) requires that local counsel appear at all hearings unless excused by the Court. *See* Lite, N.J. Federal Practice Rules, Comment 4(c) to L. Civ. R. 101.1 (Gann 1998) (citing *Occulto v. Adamar of New Jersey, Inc.*, 125 F.R.D. 611, 617 n. 2 (D.N.J.1989)). Plaintiffs argue that pursuant to Local Civil Rule 101.1(c) Mr. Marcus had to be present at the evidentiary hearing. The procedures of Local Civil Rule 101.1(c), however, can be waived under Local Civil Rule 83.2(b). *See* Lite, N.J. Federal Practice Rules, Comment 4 to L. Civ. R. 101.1 (Gann 1998) (citing *Yip v. Pagano*, 606 F.Supp. 1566, 1569 (D.N.J.1985), *aff'd mem.*, 782 F.2d 1033 (3d Cir.1986)). Thus, Mr. Marcus could have sought permission to be excused in light of his lack of any involvement in the hearing. This Court certainly would have granted Mr. Marcus a waiver of appearance.

Since Ms. Weber's and Mr. Marcus' presence at the evidentiary hearing was unnecessary, the Court will disallow the time they billed for the hearings, 35.5 hours and 23.5 hours, respectively. *See* Appendix A.

### g. Charges for Jane G. Stevens

Defendants argue that given that Mr. LiCalsi, a fairly senior partner, was heavily involved in this case, there was no need for another senior partner such as Ms. Stevens to confer with Mr. LiCalsi regarding the contempt hearing. The Court disagrees.

Ms. Stevens billed .30 hours for conferring with Mr. LiCalsi. It is a reasonable and well

---

9. In fact, Ms. Weber testified as a witness at the evidentiary hearing concerning the investigation leading to Plaintiffs' discovery that Defendants had violated the Consent Order.

10. The *Windall* Court stated:
We disagree, however, with the Air Force's contention that time spent preparing the intent to sue letter is not compensable. To the extent that the district court held otherwise in *Monsanto*, it is overruled.
*Windall*, 51 F.3d at 1189. The instant case does not concern an intent to sue letter. Thus, *Monsanto's* subsequent history does not detract from its precedential value as it pertains to the case, *sub judice*.

accepted way to practice law for attorneys to seek advice from their colleagues. Further, the .30 hours Ms. Stevens billed for this matter is *de minimis* in light of the length of the evidentiary hearing (4 days) and the issues involved.

### 3. *Excessiveness*

■ Defendants also object to Plaintiffs' counsel's requested fee on the ground that the number of hours billed is excessive. *See Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). "[H]ours are excessive if they represent more time than is reasonably necessary to complete the task." *Id.* at 1192.

### a. *Legal Research and Drafting*

Defendants argue that the time spent by Plaintiffs' counsel conducting legal research and drafting was excessive. In addition, Defendants argue, Gold, Farrell used senior attorneys to perform tasks which should have been delegated to junior associates. The Court agrees.

Ms. Lippman, a ninth-year associate spent 18 hours researching and reviewing the law in connection with the contempt motion at an hourly rate of $240. Ms. Costello, a seventh-year associate spent an additional 7.9 hours researching the law on contempt at a rate of $210 per hour.

Ms. Lippman also spent approximately 22 hours at an hourly rate of $260 researching and reviewing the case law on ethics in connection with Plaintiff's reply brief. Ms. Costello and Mr. Weller, both seventh-year associates, billed 21 hours and 12 hours, respectively, for research on the same issue at an hourly rate of $230 and $250, respectively. Further, Ms. Lippman spent 17 hours conducting legal research on evidentiary and trial procedure issues and identifying and organizing exhibits in preparation for the contempt hearing.

■ These attorneys are all too senior and overpriced for the task of legal research. The Third Circuit has repeatedly held that courts will not tolerate "the wasteful use of highly skilled and highly priced talent for matters easily delegable to nonprofessionals or less experienced associates." *Ursic*, 719 F.2d at 677. Just like "Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn", *id.*, Plaintiffs' counsel cannot charge senior attorney rates for basic legal services. Accordingly, "routine work [such as legal research] can and should be directed to low level attorneys." *Carpenter Tech. Corp. v. Armco, Inc.*, 808 F.Supp. 408, 412 (E.D.Pa.1992), *aff'd*, 993 F.2d 876 (3d Cir.1993) (Table).

The Court is aware that Gold, Farrell does not employ very junior attorneys, such as second or third-year associates. A cursory look at the Martindale–Hubbell Law Directory reveals that the most junior attorneys at Gold, Farrell have been out of law school for at least five years. Gold, Farrell is entitled to only employ mid-level to senior attorneys. In such a case, however, Gold, Farrell cannot bill almost 100 hours in legal research at senior attorney rates. "A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law." *Ursic*, 719 F.2d at 677.

In addition to almost 60 hours in legal research, Ms. Lippman expended another 32.5 hours drafting the motion for contempt (a 17 page brief) and the accompanying affidavits and an additional 18 hours for editing, reviewing and finalizing the contempt motion. She also spent 15.25 hours drafting the 25 page reply brief in connection with the contempt motion [11] and 11 hours drafting a supplemental 7 page ethics letter brief.

■ It is unreasonable for a senior and high-priced attorney such as Ms. Lippman to have devoted over 75 hours to drafting and editing the contempt motion and the reply briefs. "Normally the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should

---

**11.** Ms. Lippman billed 30.5 hours for drafting the reply brief. However, the Court already deducted 50 percent of the hours because the reply brief also addressed Defendants' cross-motion to dissolve the Consent Order. *See* Appendix A.

require an attorney to perform a particular task." *Rainey v. Philadelphia Hous. Auth.*, 832 F.Supp. 127, 130 (E.D.Pa.1993).

■ This Court finds that Gold, Farrell's practice in the instant case of only utilizing senior attorneys for routine tasks such as legal research resulted in excessive fees. Further, even though Gold, Farrell's practice of having a senior attorney draft all the briefs is acceptable, the hours billed by Ms. Lippman for drafting are excessive. Consequently, the Court will reduce the number of hours requested by Gold, Farrell for Ms. Lippman, Ms. Costello and Mr. Weller for legal research and drafting by 50 percent to account for the excessive hours spent drafting and editing and the senior rates charged for junior tasks. *See* Appendix A; *see also Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir.1995) ("[r]outine tasks, if performed by senior [attorneys] in large firms, should not be billed at their usual rates") (quoting *Ursic*, 719 F.2d at 677). Accordingly, the Court will deduct 67 hours for Ms. Lippman, 14.5 hours for Ms. Costello and 6 hours for Mr. Weller as excessive.

### b. Time Spent Revising and Editing Briefs

Defendants argue that the time Mr. LiCalsi spent revising and editing the contempt motion and reply brief is excessive in light of the fact that Ms. Lippman, a senior attorney, drafted and edited it. The Court agrees.

Ms. Lippman spent approximately 66 hours drafting and editing the contempt motion and reply brief. Mr. LiCalsi billed approximately 14 hours in connection with drafting and editing the contempt motion and reply brief. This amount of time is excessive, especially when a ninth-year associate devoted so much time to the briefs herself. Thus, the Court will reduce the number of hours requested by Mr. LiCalsi for drafting and editing the contempt motion and reply brief by 50 percent.

### c. Time Spent Preparing for Evidentiary Hearing

Defendants assert that the time Mr. LiCalsi billed for preparation for the evidentiary hearing is excessive. The Court agrees.

■ Mr. LiCalsi billed approximately 87 hours for hearing preparation. The four days of hearing totaled 30 hours. The Court finds that it is excessive for a senior partner to spend almost three times as long to prepare for a hearing as to attend it.[12] *See Washington*, 89 F.3d at 1039 (upholding district court's determination that 69.9 hours of trial preparation, an amount twice as long as the trial itself was excessive and unreasonable even in light of number of issues raised and voluminous record). Mr. LiCalsi "cannot demand a high hourly rate ... and then run up an inordinate amount of time" preparing for a case in his alleged expertise. *Ursic*, 719 F.2d at 677. Therefore, the Court will reduce the number of hours sought by Mr. LiCalsi for hearing preparation by 50 percent. *See* Appendix A.

### d. Paralegal Services

Gold, Farrell seeks to recover $21,206.50 for paralegal services. The Supreme Court has held that expenses incurred for paralegal services are recoverable. *Missouri v. Jenkins*, 491 U.S. 274, 289, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). In accordance with L. Civ. R. 54.2 and *Keenan*, 983 F.2d at 473, Gold, Farrell submitted summaries showing the daily activities of each paralegal, the hours consumed, a general description of the tasks performed and each paralegal's billing rate. Defendants argue that the number of hours billed by paralegals was excessive and unnecessary.

### Ms. Harris

Ms. Harris billed 162.6 hours at a rate of $110 per hour. The Court has already deducted 9 hours as not expended in connection with the contempt motion. In addition, the Court shall deduct 9 hours devoted to check-

---

12. Mr. LiCalsi claims that the amount of time he spent preparing for the hearings is not excessive in light of the fact that the hearing dates were spread out over several months and the Court canceled several hearing dates after he had al-ready spent hours preparing for that hearing. The Court finds that based on Mr. LiCalsi's experience, he should not have needed an inordinate amount of time to refresh his recollection.

ing transcript cites in Defendants' Proposed Findings of Fact as unnecessary. The rest of the hours Ms. Harris billed were reasonable and necessary to Plaintiffs' prosecution of the motion for contempt and the tasks were completed within a reasonable amount of time.

### Mr. Fallon

Mr. Fallon billed 21.30 hours at a rate of $110 per hour. The Court finds that these hours were all expended in connection with the contempt motion. Further, the tasks Mr. Fallon performed (e.g., review documents, prepare exhibits to contempt motion, cite check brief) are of the sort generally performed by paralegals and billed to the client at paralegal rates. Thus, the Court finds that the number of hours Mr. Fallon billed was reasonable.

### Ms. Termine

Ms. Termine billed 1.5 hours at an hourly rate of $110 and 6.5 hours at an hourly rate of $125. The Court has already deducted 2 hours as expended in connection with defending against Defendants' motions. The Court finds, however, that the remaining hours Ms. Termine billed were devoted to tasks generally performed by paralegals and were completed in a reasonable amount of time. Thus, the Court finds that the number of hours Ms. Termine billed was reasonable.

### B. *Hourly Rate*

 "After determining the number of hours reasonably expended, the Court must examine whether the requested hourly rate is reasonable." *Rode*, 892 F.2d at 1183. "The starting point in determining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." *Windall*, 51 F.3d at 1185. The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *See, e.g., Blum*, 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541; *Smith*, 107 F.3d at 225; *Washington*, 89 F.3d at 1035; *Rode*, 892 F.2d at 1183.

 The fee applicant's burden may be satisfied by the submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community. *See Washington*, 89 F.3d at 1036. The burden then shifts to the party opposing the fee application to produce affidavits or other submissions which create an issue as to the reasonableness of the requested hourly rate. *See id.* If the fee applicant fails to meet its initial burden or if the opposing party challenges the fee applicant's proffer, the determination of the appropriate market rate is vested within the court's discretion. *See Rode*, 892 F.2d at 1183; *see also Washington*, 89 F.3d at 1036. The Court must assess the experience, skill and reputation of Plaintiffs' attorneys and compare their rates to the rates in the relevant market for similar services by attorneys of comparable experience, skill and reputation. *See Rode*, 892 F.2d at 1183 (citations omitted).

Plaintiffs have submitted affidavits from both Donald Zakarin, a partner at Pryor, Cashman, Sherman & Flynn, LLP, a New York City law firm specializing in copyright and trademark litigation, and from W. Drew Kastner, of Counsel to Lerner, David, Littenberg, Krumholtz & Mentlik, a New Jersey law firm specializing in copyright, trademark and patent litigation. Both affiants stated that based on their personal knowledge of the billing rates of partners and associates at their firms and at other firms in New York City and New Jersey, Mr. LiCalsi's hourly rate of $400 and Ms. Lippman's hourly rate of $260 are reasonable and in line with the prevailing market rates charged by New York City and New Jersey attorneys of comparable skill and experience. Defendants argue that the relevant community is not New York City, as Plaintiffs assert, but New Jersey. Defendants have submitted evidence that the prevailing market rates for attorneys practicing in New Jersey is substantially lower than the rates Mr. LiCalsi and Ms. Lippman seek.

 First, the Court must determine whether the relevant market is New York City or New Jersey. Plaintiffs contend that the relevant community is New York City, where Gold, Farrell's and Shukat, Arrow's offices are located. Defendants contend that the relevant market is New Jersey where this case was litigated.

In 1986, the Third Circuit appointed a task force that recommended adoption of the "forum rate" rule. *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 260 (1986) ("Task Force Report"). The task force recommended that an out-of-town attorney "receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged." *Id.* This is known as the "forum rate" rule. *See id.* The task force suggested that deviation from the forum rate "rule be permitted only when the need for the special expertise of counsel from a distant district is shown or when local counsel are unwilling to handle the case." *Id.*

However, even after the task force's recommendation, the Third Circuit has not "adopt[ed] any single authoritative definition of the relevant community." *Windall*, 51 F.3d at 1186 (internal quotation and citation omitted). Two years after the task force's recommendation of the "forum rate" rule, the Third Circuit specifically reserved the question of whether the market rate was the rate in the law firm's community or the rate in the community in which the case was litigated. *Student Public Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1442 n. 4 (3d Cir.1988) ("SPIRG").

In *SPIRG*, two New Jersey not-for-profit groups brought suit under the Clean Water Act against AT & T Bell Laboratories in this district. 842 F.2d at 1439. Both parties were represented by Washington, D.C. law firms. In calculating the fee award, the district court employed the market rate for Washington, D.C. The Third Circuit affirmed because "the case was briefed and argued based on the D.C. market, and [the court] had no reasonable basis for believing any differential exist[ed] between the two metropolitan markets." *Id.* at 1442.

However, a year later, a district court applied the forum rate rule. *See Monsanto*, 721 F.Supp. at 617. The district court noted that the Third Circuit in *SPIRG* had refused to define the "relevant community." *Id.* In distinguishing *SPIRG* from *Monsanto*, the district court stated that:

The court's decision to apply Washington, D.C. rates in *SPIRG v. AT & T* can be explained by four major factual distinctions from the instant case. First, both plaintiffs and defendants were represented by Washington, D.C. law firms. Second, the case was "briefed and argued based on the D.C. market." Third, the court could find "no reasonable basis for believing any differential existed between the two metropolitan markets" because the district court, which sat in Newark, New Jersey, had not been provided with data as to market rates prevailing in northern New Jersey. Fourth, and perhaps most significantly, there was apparently no objection made by the defendant to the plaintiffs' Washington, D.C. "market rate" proofs.

*Monsanto*, 721 F.Supp. at 617–18 (citing *SPIRG*, 842 F.2d at 1442 n. 4). Relying on the Task Force Report, the *Monsanto* Court concluded that southern New Jersey was the appropriate legal market for calculating the fee award because the "[p]laintiffs voluntarily chose both the venue of the action and the law firm they wished to represent them . . ." *Id.* The court refused to allow plaintiffs to impose additional costs on defendants resulting from plaintiffs' decision to seek counsel outside the district when there was no evidence showing a lack of competent New Jersey law firms willing to handle the case. *Id.* The court further stated that:

A blanket acceptance of plaintiffs' contention that the relevant market is wherever their counsel's law firm is located provides for a slippery slope indeed. Without so much as a showing of necessity as contemplated by the Task Force, plaintiffs would be free not only to retain counsel from literally anywhere in the United States, but arguably the entire world . . . The forum rate rule is the most sensible method of avoiding such excesses, while allowing parties to select competent counsel of their choice.

*Id.*

The Third Circuit affirmed the *Monsanto* Court's decision without opinion. *See Monsanto*, 891 F.2d at 283. As stated above, the Third Circuit has "refused to give a bright line definition of the relevant community."

*Windall,* 51 F.3d at 1187. This court finds the rationale underlying the task force's recommendation and the *Monsanto* Court's application of the forum rate rule persuasive.

Plaintiffs argue that application of the forum rate rule is inappropriate in the instant case because deviation from the forum rate rule is permitted when "the need for the special expertise of counsel from a distant district is shown." *See* Task Force Report, 108 F.R.D. at 260. Plaintiffs contend that they have shown the need for Mr. LiCalsi's and Ms. Lippman's "special expertise" in litigating Defendants' violations of the Consent Order because: (1) Mr. LiCalsi and Ms. Lippman litigated the underlying litigation which resulted in execution and entry of the Consent Order; (2) Mr. LiCalsi and Ms. Lippman negotiated and drafted the Consent Order; and (3) Mr. LiCalsi and Ms. Lippman were responsible for overseeing Defendants' compliance with the Consent Order.

Mr. LiCalsi and Ms. Lippman may have shown that they have a "special expertise" but they have not submitted any evidence showing a lack of competent New Jersey counsel possessing such expertise. The affidavits Plaintiffs' counsel provided merely set forth the market rates for attorneys practicing in New York and New Jersey but they do not address whether New Jersey firms were unwilling or not competent to handle the prosecution of a contempt motion. Since Plaintiffs' counsel have not provided the Court with any evidence which would merit deviating from the forum rate rule, this Court will award Plaintiffs' counsel its fees pursuant to New Jersey rates.

Plaintiffs have submitted an affidavit from W. Drew Kastner, an attorney practicing in a New Jersey firm specializing in copyright, trademark and patent litigation. Mr. Kastner attested that based on his personal knowledge of the billing rates of partners and associates at his firm, Mr. LiCalsi's hourly rate of $400 and Ms. Lippman's hourly rate of $260 are reasonable and in line with the prevailing market rates charged by New Jersey attorneys of comparable skill and experience. Defendants, however, have submitted evidence that the prevailing market rates for attorneys practicing in New Jersey is substantially lower than the rates that Mr. LiCalsi and Ms. Lippman seek. *See* Rocco Cammarere, Partners in Jersey Rake in Top Dollars, The New Jersey Lawyer, Mar. 10, 1997, at 1. The Court agrees with Defendants.

Defendants' submissions show that partners in Newark, where this Court sits, average billing rates range from $250 to $274 per hour. *See id.* In 1997, the hourly rates for partners at the prestigious New Jersey firm Lowenstein, Sandler, Kohl, Fisher & Boylan ranged from $210 to $350. *See id.*[13]

Mr. LiCalsi's hourly rate of $400 is approximately 20 percent less than the hourly rates commanded by Gold, Farrell's highest billing partner, Mr. Gold, whose rate is $495 per hour. Thus, the Court finds that a reasonable hourly rate for Mr. LiCalsi is 20 percent less than the hourly rate charged by the highest billing partner in a prestigious New Jersey firm such as Lowenstein, Sandler, Kohl, Fisher & Boylan. Accordingly, the Court finds that $280 per hour is a reasonable hourly rate for an attorney of Mr. LiCalsi's skill, experience and reputation practicing in New Jersey. *See* Setting Fees: How Should Law Firms Proceed in 1997?, Compensation & Benefits for Law Offices, Feb. 1997, at 4 (average hourly rates for partners in law firms located in the East range from $225 to $280). This rate is slightly higher than the average hourly rate charged by attorneys in Newark which, as stated above, ranges from $250 to $274 per hour.

Defendants contend that in determining a reasonable hourly rate for Plaintiffs' attorneys, the Court should consider the size of the firm. Defendants argue that partners and associates in large firms command higher rates than attorneys in smaller firms such

---

13. In 1997, the hourly rates for partners in New Jersey firms in Morristown ranged from $215 to $360 at Pitney, Hardin, Kipp & Szuch and from $200 to $325 at Riker, Danzig, Scherer, Hyland & Perretti. Hourly rates for partners in Newark firms ranged from $200 to $325 at Gibbons, Del Deo, Dolan, Griffinger & Vecchione, from $215 to $350 at McCarter & English and from $200 to $425 at Sills Cummis Radin Tischman Epstein & Gross. *See* Billing Rates for Firms in 37 Cities, 16 No. 12 Of Counsel 13, July 7, 1997.

as Gold, Farrell which has only 9 partners and 21 associates. While this may be true, there is no authority that this Court has found to support Defendants' contention that a distinction in billing rates should be drawn based on firm size. The law is well-established that courts shall look to the rates charged by lawyers of comparable skill, experience and reputation in the relevant community. *See Rode,* 892 F.2d at 1183. The Third Circuit has never suggested that firm size should be considered by the courts in determining whether an attorney's requested hourly rate is reasonable and in line with the prevailing rates in the relevant market.

### Ms. Lippman

Ms. Lippman's hourly rate was $240 per hour until it was increased to $260 per hour on October 1, 1997. In 1997, associates in New Jersey law firms charged anywhere from $85 to $215 per hour. *See* Billing Rates for Firms in 37 Cities, 16 No. 12 Of Counsel 13, July 7, 1997;[14] *see also* Judson Hand, Getting Your Money's Worth From a Lawyer, The Star–Ledger, Dec. 21, 1997; *But see* Mark Hansen, IP Means Impressive Pay: Survey Says Intellectual Property Partners Bill Most Per Hour, ABA Journal, Jan. 1997, at 27 (stating that average billing rates for associates nationwide range from $95 per hour for newly hired attorneys to $155 per hour for an associate with seven or more years of experience). Ms. Lippman graduated *cum laude* from Fordham University School of Law in 1989. She was a member of the law review and a recipient of the American Jurisprudence Award in Property. This Court finds that $190 per hour is a reasonable rate for a ninth-year associate of Ms. Lippman's skill, experience and reputation practicing in New Jersey.

Plaintiffs' counsel have failed to submit affidavits attesting to the reasonableness of the billing rates of the other attorneys and

paralegals on this case: Ms. Stevens, Ms. Costello, Mr. Weller, Mr. Manuelian, Ms. Harris, Mr. Fallon, Ms. Termine, Ms. Weber, Mr. Herbsman and Mr. Marcus. Thus, the determination of the appropriate rate as to the rest of the attorneys and paralegals falls within this Court's discretion. *See Rode,* 892 F.2d at 1183. The Court must determine if their rates are in line with the prevailing market rates for attorneys in New Jersey of comparable skill, experience and reputation. *See id.*[15]

### Ms. Stevens

Ms. Stevens, a partner at Gold, Farrell, was admitted to the practice of law in 1978. She practiced at another New York City law firm for one year before joining Gold, Farrell. Ms. Stevens has published extensively in the areas of trademark, copyright and unfair competition. Her billing rate is $400 per hour. This Court finds that Ms. Stevens' experience, skill and reputation are comparable to Mr. LiCalsi's experience, skill and reputation. Accordingly, the Court finds that an hourly rate of $280 is a reasonable rate for Ms. Stevens.

### Ms. Costello

Ms. Costello was admitted to the bar in 1992. She graduated *magna cum laude* from New York Law School in 1991. She was a Notes Editor of the New York Law School Law Review and the author of *Who Has the Ear of the King?,* 35 N.Y.L. Sch. L.Rev. 655 (Spr.1991). Ms. Costello is a recipient of an American Jurisprudence Award in Constitutional Law and Trial Advocacy. She practiced at Schulte, Roth & Zabel for three years prior to joining Gold, Farrell. Ms. Costello's hourly rate was $210 until October 1, 1997 when it was increased to $230 per hour. The Court finds that an hourly rate of $170 is a reasonable rate for

---

**14.** In 1997, the hourly rates for associates in Morristown, New Jersey firms ranged from $110 to $200 at Pitney, Hardin, Kipp & Szuch and from $95 to $215 at Riker, Danzig, Scherer, Hyland & Perretti. The hourly rates for associates in Newark firms ranged from $90 to $195 at Gibbons, Del Deo, Dolan, Griffinger & Vecchione, from $85 to $210 at McCarter & English and from $95 to $200 at Sills Cummis Radin Tischman Epstein & Gross. *See* Billing Rates for

Firms in 37 Cities, 16 No. 12 Of Counsel 13, July 7, 1997.

**15.** As stated above, Plaintiffs have not provided the Court with any evidence that would merit deviating from the forum rate rule. Thus, the Court finds that New Jersey is the relevant market for all the attorneys and paralegals in the instant case.

an associate of Ms. Costello's skill, experience and reputation practicing in New Jersey.

### Mr. Manuelian

Mr. Manuelian was admitted to the bar in 1992. He graduated from Fordham University School of Law in 1989. He is a recipient of an American Jurisprudence Award in Patents, Trademarks and Copyrights. He clerked for the Honorable Whitman Knapp, United States District Judge for the Southern District of New York. Before joining Gold, Farrell, Mr. Manuelian practiced at Debevoise & Plimpton for four years. He is the co-author of *Music Plagiarism: A Framework for Litigation*, Entertainment and Sports Lawyer, Summer, 1997. Mr. Manuelian's billing rate is $235 per hour. The Court finds that an hourly rate of $175 is a reasonable rate for an associate of Mr. Manuelian's skill, experience and reputation practicing in New Jersey.

### Mr. Weller

Mr. Weller was admitted to the bar in 1992. He graduated from Benjamin N. Cardozo School of Law in 1990. He clerked for the Honorable John M. Walker, Jr., United States District Judge for the Southern District of New York, then he clerked for the Honorable Hector M. Lafitte, United States District Judge for the District of Puerto Rico. Mr. Weller's billing rate was $230 per hour until October 1, 1997 when it was increased to $250 per hour. This Court finds that $175 per hour is a reasonable rate for an associate of Mr. Weller's skill, experience and reputation practicing in New Jersey.

### Ms. Harris (paralegal)

Ms. Harris graduated from the University of Illinois in 1992. She worked at Lord, Bissell & Brook for two years prior to joining Gold, Farrell in 1997. Ms. Harris' billing rate is $110 per hour. This Court finds that $75 per hour is a reasonable rate for a paralegal of Ms. Harris' skill and experience working in a New Jersey law firm. *See* Mark Hansen, IP Means Impressive Pay: Survey Says Intellectual Property Partners Bill Most Per Hour, ABA Journal, Jan. 1997 (projecting that legal assistant billing rates would reach $70 per hour in 1997).

### Ms. Termine (paralegal)

Ms. Termine is a graduate of St. Johns University. She was a paralegal at O'Donnell & McLaughlin from 1988–89 and at Cahill, Gordon & Reindel from 1989–92. Ms. Termine's hourly rate was $110 until October 1, 1997 when it increased to $125 per hour. This Court finds that $80 per hour is a reasonable rate for a paralegal of Ms. Termine's skill and experience working in a New Jersey law firm. *See id.*

### Mr. Fallon (paralegal)

Mr. Fallon graduated from the University of Colorado in 1994. He worked at Kirkland & Ellis prior to joining Gold, Farrell in 1995. Mr. Fallon's billing rate is $110 per hour. The Court finds that $75 per hour is a reasonable rate for a paralegal of Mr. Fallon's skill and experience working in a New Jersey law firm. *See id.*

### Ms. Weber

Ms. Weber, a partner at Shukat, Arrow, began practicing law in 1982. She is the author of *The Visual Artists' Manual: Licensing, Merchandising and Publishing* (1981). Ms. Weber's hourly billing rate was $275 until January 1, 1998 when it was increased to $290 per hour. This Court finds that $225 per hour is a reasonable rate for an attorney of Ms. Weber's skill, experience and reputation practicing in New Jersey.

### Mr. Herbsman

Mr. Herbsman graduated from Fordham University School of Law in 1990. He worked at Weil, Gotshal & Manges for four years prior to joining Shukat, Arrow in 1994. Mr. Herbsman's billing rate is $175 per hour. This Court finds that $140 per hour is a reasonable rate for an attorney of Mr. Herbsman's skill, experience and reputation practicing in New Jersey.

### Mr. Marcus

Mr. Marcus graduated from George Washington University School of Law in 1983. He is the co-author of *Claims Against Government*, PLI Toxic Substances Litigation Report (1982). Mr. Marcus' billing rate was $200 per hour until January 1, 1998 when it was increased to $225 per hour. Mr. Marcus is an associate at Shapiro & Croland, a New

Jersey law firm. As stated above, associates' billing rates in New Jersey firms range from $95 per hour for very junior attorneys to $200 per hour for senior associates. The Court finds that $190 per hour is a reasonable rate for an attorney of Mr. Marcus' skill, experience and reputation.

## EXPENSES

Plaintiffs' counsel seek an award of costs and out-of-pocket expenses totaling $34,-813.71. Specifically Gold, Farrell seeks $33,-311.58, Shukat, Arrow seeks $437.15 and Shapiro & Croland, seeks $1,065.63.

Fed.R.Civ.P. 54(d)(1) requires the clerk of the court to award certain properly itemized litigation expenses to the prevailing party as a matter of course unless the district court directs otherwise. *See* L. Civ. R. 54.2(a); comment 4. These costs are listed in 28 U.S.C. § 1920 and are known as taxable costs.[16] A federal court, however, may award litigation expenses other than those enumerated as § 1920. *See Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1224 (3d Cir.1995); *see also* Fed.R.Civ.P. 54(d)(2) (recognizing that a Court may award "attorneys' fees and related non-taxable expenses"). These non-taxable expenses may be awarded as part of a "reasonable attorney's fee". *Abrams,* 50 F.3d at 1225.

 However, not all expenses are reimbursable as part of a reasonable attorney's fee. *See Abrams,* 50 F.3d at 1225. The Third Circuit has determined that "only those litigation expenses that are incurred in order for the attorney to be able to render his or her legal services" are reimbursable. *See id.* In this Circuit, the following expenses are generally recoverable as part of attorneys' fees "when it is the custom of attorneys in the local community to bill their clients separately for them": (a) photocopying expenses; (b) the attorney's telephone expenses; (c) travel time and expenses of the

attorney; and (d) postage. *See id.* (citations omitted).

 The costs and expenses incurred by counsel, however, are subject to the Court's determination that they are reasonable and necessary. *See id.* In addition, the fee applicant has the burden of adequately documenting and itemizing the costs requested. *See Hall v. Harleysville Ins.,* 943 F.Supp. 536, 546 (E.D.Pa.1996); *see also* L. Civ. R. 54.2(a)(5). Defendants object to Plaintiffs' request for reimbursement for out-of-pocket expenses on the ground that the expenses are not adequately documented.

Plaintiffs' counsel submit that they itemized their expenses in accordance with L. Civ. R. 54.2(a)(5). They did not. Plaintiffs' counsel merely set forth their expenses in generalized categories, e.g., Lexis and other computer research, duplicating expenses, meals and fares. Thus, Plaintiffs have not met their burden of adequately documenting that their out-of-pocket expenses were "incurred in order for the attorney to be able to render his or her legal services." *Abrams,* 50 F.3d at 1225.

### A. Court Reporting Services

Shapiro & Croland seeks to recover $785 for court reporting services. Court reporting services are recoverable as taxable expenses under 28 U.S.C. § 1920(2). Thus, the Court shall award the full amount requested.

### B. Computerized Legal Research

 Gold, Farrell seeks to recover $5,486.31 in LEXIS and other computer research. The use of Lexis [or Westlaw] allows for quicker research and access to the most recent case law, therefore, it allows for more efficient use of an attorney's time. Furthermore, it is the type of expense that attorneys bill separately to their clients. *See*

---

**16.** 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

*Abrams,* 50 F.3d at 1225. Thus, fee applicants are generally compensated for reasonable expenses such as costs stemming from computer research. *See O'Farrell v. Twin Bros. Meats, Inc.,* 889 F.Supp. 189, 192 (E.D.Pa.1995); *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 38 F.3d 1429, 1440 (7th Cir.1994) ("[W]e see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on the computer and bills both the time and the computer fee. In both cases the total costs are attorneys' fees."); *see also Cappeletti Bros., Inc. v. Broward County,* 754 F.Supp. 197, 198 (S.D.Fla.1991).

Plaintiffs have failed to itemize their research. Thus, the Court is unable to determine what percentage of the computerized legal research costs were incurred in connection with the contempt motion. Further, the Court is unable to determine whether Plaintiffs' expenses are reasonable.[17] Thus, the Court will reduce the computerized legal research costs by 75 percent.

### C. *Duplicating Expenses*

■ Gold, Farrell seeks to recover $5,077.04 in duplicating costs and Shapiro & Croland seeks to recover $56.70 for the same. Photocopying expenses are generally recoverable as long as the cost per page and the number of copies was not excessive and the copies were reasonably related to the litigation. *See Abrams,* 50 F.3d at 1225; *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128 (5th Cir.1983). In addition, the duplicating expenses must have been necessary to effective and competent representation. *See Abrams,* 50 F.3d at 1225; *In re Media Vision Tech. Sec. Litig.,* 913 F.Supp. 1362, 1368 (N.D.Cal.1996) (citations omitted).

Plaintiffs have not submitted evidence of how many copies were made and the cost per page. Thus, it is impossible for the Court to

determine whether the cost per page or the number of copies was excessive. Furthermore, Plaintiffs' counsel have not asserted when those copies were made. Thus, the Court is unable to determine whether the copies were made in connection with the contempt motion. *See Halderman v. Pennhurst State Sch. & Hosp.,* 855 F.Supp. 733, 743 (E.D.Pa.1994) (copy charges were unnecessary where Plaintiffs made 107,126 in office copies for which they charged $.25 per page), *modified,* 49 F.3d 939 (3d Cir.1995). Since, Plaintiffs have failed to itemize their duplicating costs and have not provided the Court with any descriptions of what was photocopied, how many pages it copied or what justification exists for the number of copies,[18] *see Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.,* 109 F.R.D. 12, 30 (D.Neb.1983), the Court will reduce the costs by 75 percent. *See Monsanto,* 721 F.Supp. at 623 (awarding plaintiff only 10 percent of requested duplicating costs).

### D. *Express Mail and Messenger Services*

Gold, Farrell seeks to recover $880.49 in delivery charges and Shapiro & Croland seeks to recover $147.70 for the same. The Third Circuit has never determined whether express mail charges and courier services are reimbursable. *See Halderman,* 855 F.Supp. at 744 (allowing those charges because they were reasonable and were related to the litigation). In determining whether those expenses are reimbursable as part of attorneys' fees, the Court must look to whether the expenses were "incurred in order for the attorney to be able to render his or her legal services". *Abrams,* 50 F.3d at 1225. The Court must also consider whether attorneys generally bill such expenses to the client. *Id.*

Expedited delivery may be essential to a party's ability to comply with court deadlines. In addition, those costs are typically charged

---

**17.** For example, if Plaintiffs' counsel not only conducted research on line but also printed out hundreds of pages of opinions when they are available in the reporters in the firm library, the Court would disallow the on line printing costs.

**18.** Mr. Marcus described only one duplicating expense of $19.08 as "Copy of Recent Court Opinion". The Court, however, has no way of knowing how many copies of the Opinion he made and at what cost per copy.

to the client. Thus, the Court finds that express mail charges and messenger expenses are recoverable. However, because Plaintiffs neglected to itemize the amounts spent on expedited delivery services for each motion or show that the expenses were reasonable and necessary, the Court will reduce the expedited delivery expenses by 75 percent. *See Monsanto,* 721 F.Supp. at 623 (awarding plaintiff only 12 percent of expedited delivery charges but denying courier services costs because plaintiffs did not prove that courier services were essential and necessary and were not incurred merely for plaintiffs' counsel's convenience).

### E. *Meals and Fares*

Gold, Farrell seeks $2,257.84 in meals and fares, Shapiro & Croland seeks $12.10 for tolls and parking and $12.18 for mileage and Shukat, Arrow seeks $437.15 for car services.

■■■ The Third Circuit has held that an attorney's travel expenses are recoverable if they are "incurred in order for the attorney to be able to render his or her legal services." *Abrams,* 50 F.3d at 1225. Thus, travel expenses such as fares for taxis and car services are recoverable so long as they are reasonable and necessary. In the instant case, Plaintiffs' attorneys failed to itemize their travel expenses or even specify where transportation was to and from and for whom.

It appears, however, that Shukat, Arrow's car service expenses were incurred in connection with Ms. Weber's round trip transportation to the evidentiary hearing on four different dates. As stated above, except for the day when she testified on November 3, 1997, Ms. Weber's presence at the evidentiary hearing was unnecessary. Thus, the Court will reduce Shukat, Arrow's transportation costs by 75 percent.

Shapiro & Croland has also failed to itemize its transportation costs. It appears, however, that Shapiro & Croland's mileage, tolls

and parking expenses were incurred in connection with Mr. Marcus' attendance at the evidentiary hearing. As stated above, Mr. Marcus' appearance at the evidentiary hearing was unnecessary. Therefore, the Court will disallow Shapiro & Croland's transportation costs.

■■■ Gold, Farrell has failed to specify what percentage of the expenses incurred for meals and fares is attributable to travel expenses. The Third Circuit has not addressed whether expenses for attorneys' meals are reimbursable. Other courts, however, have held that expenses for meals are not litigation expenses that are essential to the attorneys' ability to render legal services. *See Monsanto,* 727 F.Supp. at 889 (holding that defendants are not responsible for the cole slaw and chicken dinners plaintiffs' counsel purchased to feed its overtime staff); *Carrero v. New York City Hous. Auth.,* 685 F.Supp. 904, 909 (S.D.N.Y.1988) (disallowing expenses for meals), *aff'd,* 890 F.2d 569 (2d Cir.1989); *City Nat'l Bank v. American Commonwealth Fin. Corp.,* 657 F.Supp. 817, 820 (W.D.N.C.1987). The Court agrees. Defendants should not have to pay for Plaintiffs' counsel's meals. This expense does not contribute to the litigation; therefore, the Court will disallow it.[19]

Because Gold, Farrell did not itemize its expenses the Court has no means of calculating the amount they spent on meals, which is not reimbursable, and the amount counsel spent on fares, which is reimbursable so long as it is reasonable and necessary. Furthermore, the Court is unable to determine what percentage of those expenses was incurred in connection with the motion for contempt. Thus, the Court will reduce Gold, Farrell's expenses for meals and fares by 90 percent.

### F. *Overtime for Non–Legal Staff*

■■■ Gold, Farrell seeks to recover $1,235.97 in overtime for non-legal staff. The Court may reimburse a prevailing party

---

**19.** As stated by one Court "[a]s for meals and clerical overtime, these are expenses that result from plaintiff's counsel's staffing decisions. Had the firm hired more attorneys or secretaries, there would be no need for such expenditures." *Ginsberg v. Valhalla Anesthesia Assocs.,* No.CIV.

A.96–6462, 1998 WL 19997, at *3 (S.D.N.Y. Jan.20, 1998). "If the firm chooses to reimburse its attorneys' meals or pay secretarial overtime, that is a fine benefit, but not one for which defendant should be liable." *Id.*

for supplemental services of non-legal staff only where an "extraordinary need for supplemental services has arisen, either as a result of the complexity of the litigation, unusual time constraints for the preparation and filing of court papers, or other unusual causes . . . ." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 624 & n. 7 (4th Cir. 1978). However, the party seeking to recover such expenses must demonstrate the necessity for such services. *Id.* Gold, Farrell has not submitted any evidence showing an extraordinary need for supplemental services. Thus, the Court shall disallow expenses for overtime of non-legal staff. *See Monsanto,* 721 F.Supp. at 623 (denying requests for secretarial overtime costs because plaintiffs did not prove that such expenses were essential and necessary and were not incurred merely for plaintiffs' counsel's convenience).

### G. *Faxes and Telephone Charges*

Shapiro & Croland seeks to recover $39 for telephone and fax charges. An attorney's telephone and fax expenses are generally recoverable as long as they are reasonable and necessary in order for the attorney to be able to render legal services. *See Abrams,* 50 F.3d at 1225. Shapiro & Croland did not itemize the long distance telephone calls, i.e., specify to whom the calls were made or list the cities called. Further, the Court is unable to determine what percentage of the fax and telephone costs were incurred in connection with the contempt motion. Since the Court is unable to determine if those expenses were reasonable, it shall not permit any recovery.

### H. *Costs of Investigating the Contempt*

Gold, Farrell seeks to recover $14,-198.63 for services rendered by the James Mintz Group, the investigators Plaintiffs had hired to investigate whether Defendants were violating the Consent Order.

The Third Circuit recently upheld a district court's determination that "[a] successful party proving contempt is entitled to recover, by way of civil fine, the expense of investigating the violation of the order [and] preparing for and conducting the contempt proceeding in addition to attorneys' fees." *Robin Woods,* 28 F.3d at 400. The Circuit Court further stated that "[j]ust as attorneys' fee awards are remedial and designed to compensate complainants for losses incurred as a result of the contemnors' violations, so too are awards to cover the other expenses involved in demonstrating violations." *Id.* (internal quotations and citations omitted). Further, other courts have held that the costs for investigative services are recoverable. *See, e.g., Stacy,* 845 F.Supp. at 1145; *Daly v. Hill,* 790 F.2d at 1083; *Wheeler,* 585 F.2d at 624; *In re Media,* 913 F.Supp. at 1368.

The costs of the investigative services is the one expense which Gold, Farrell itemized. Gold, Farrell has submitted the James Mintz Group's invoice listing the investigators' tasks, recording the date the task was performed and itemizing the billing rate for each particular task. Defendants assert that the time that the James Mintz Group spent investigating whether Defendants were violating the Consent Order was excessive. Defendants also object to the time charged by the investigators for testifying at the evidentiary hearing and for the time charged for the investigators' travel time to and from the hearing. Defendants also assert that the investigators' rates ranging from $90 to $170 per hour are exorbitant.

Defendants have provided no support for their objections or a basis for disallowing or reducing the investigative costs. As stated above, Plaintiffs are entitled to recover the full cost of investigating Defendants' violation of the Consent Order. *See Robin Woods,* 28 F.3d at 400. In addition, both paragraph O of the Consent Order and this Court's June 26, 1998 Order provide that Plaintiffs are entitled to recover all costs incurred in bringing their motion for contempt. Thus, the Court shall award Gold, Farrell the expenses incurred for services rendered by the James Mintz Group. *See General Instrument Corp. of Delaware v. Nu–Tek Electronics & Mfg., Inc.,* 3 F.Supp.2d 602, 611 (E.D.Pa.1998) (awarding investigative costs).

### I. *Expert Witness Fees*

Gold, Farrell seeks to recover $4,000 paid to Professor Bruce A. Green for his consulta-

tions and declaration. Professor Green's declaration addressed the ethical implications of both: (1) Plaintiffs' counsel's communications with Defendants' sales representatives without Defendants' counsel's consent; and (2) the investigators' and Plaintiffs' counsel's failure to inform Defendants' sales representatives that they were attorneys or persons acting under the direction of attorneys. Defendants contend that the Court should disallow Professor Green's bill in its entirety for three reasons: (1) the record does not reflect Professor Green's hourly rate or the number of hours expended as required by Local Civil Rule 54.2(a); (2) Professor Green's declaration was not necessary for the prosecuting of the contempt motion because it dealt entirely with ethics issues; and (3) Professor Green did not testify at the evidentiary hearing.

The Court has the inherent equitable power to award expert fees in a civil contempt action even if the expert witness did not testify. *See Halderman*, 855 F.Supp. at 745. "Prevailing plaintiffs in contempt action are entitled to recover the entire cost of bringing the contempt action." *Id.* Thus, non-testifying expert fees are recoverable as a cost of bringing a contempt action so long as the expenses were reasonably incurred. *Id.* However, the party seeking reimbursement for non-testifying expert fees must submit evidence that the expert witness was necessary and must account for the services performed by the expert. *See Halderman*, 49 F.3d at 943.

Gold, Farrell has accounted for the services rendered by Professor Green by submitting his declaration to the Court. Further, Professor Green's services were necessary. As evidenced by this Court's Opinion dated June 26, 1998, the Court relied upon Professor Green's declaration. In addition, contrary to Defendants' contention, counsel seeking reimbursement for costs paid to an expert does not have to provide the expert's hourly rate or the number of hours expended. This requirement applies to attorneys' fees, not to costs associated with services rendered by persons outside the law firm. Local Civil Rule 54.2(a) provides that "an attorney seeking compensation for services or reim-

bursement of necessary expenses shall file" an affidavit setting forth "(3) a description of the services rendered on each of such dates by each person **of that firm** including the identity of the person rendering the service and a brief description of that person's professional experience; (4) the time spent in the rendering of each of such services; and (5) the normal billing rate for each of said persons for the type of work performed." (emphasis added).

Further, contrary to Defendants' assertion that Professor Green's declaration was not necessary for the prosecution of the contempt motion, this Court finds that the declaration was an integral part of the contempt motion. In opposition to Plaintiffs' motion for contempt, Defendants argued that the Court must exclude any evidence obtained by investigators or Ms. Weber because it was unethically obtained. Professor Green's declaration was necessary to Plaintiffs' argument that they did not obtain the evidence of contempt unethically and, thus, the Court should not exclude it. Therefore, Defendants shall reimburse Gold, Farrell for the full cost of Professor Green's services.

## J. *Miscellaneous Expenses*

Gold, Farrell seeks $175.30 for miscellaneous expenses and Shapiro & Croland seek $12.95 for the same. However, they have not appropriately documented nor itemized those expenses. Because the Court cannot fathom what is included within miscellaneous expenses and whether those expenses were necessary and reasonable, *see Abrams*, 50 F.3d at 1225, the Court will disallow the miscellaneous expenses.

## *CONCLUSION*

Upon review and consideration of Plaintiffs' counsel's application for attorneys' fees and costs, and after accounting for hours not expended in connection with the contempt motion and for excessive, unnecessary and duplicative work, the Court awards Plaintiffs' counsel the following:

Gold, Farrell: $103,637.50 in attorneys' fees and $21,285.37 in out-of-pocket expenses;

Shukat, Arrow: $4,248.75 in attorneys' fees and $109.29 in out-of-pocket expenses; and

Shapiro & Croland: $1,558.00 in attorneys' fees and $836.11 in out-of-pocket expenses.

---

### APPENDIX A [20]
### ATTORNEYS' FEES
### *Gold, Farrell & Marks*

Paul V. LiCalsi

| Date | Hours Billed | Description | Hours Deducted |
|------|------|------|------|
| 08/29/97 | .70 | Teleconference with N. Aspinall; conference with J. Costello re: contempt motion. | .35 |
| 10/02/97 | 2.30 | Teleconference with T. Wippman; dictate memorandum; review correspondence from B. Badke; draft correspondence to clients; teleconference with P. Shukat and D. Weber. | 1.15 |
| 10/20/97 | 1.80 | Review ICS opposition papers [21] and outline reply; conference with A. Lippman re: same; teleconference with D. Weber re: Lennon License allegations. | .90 |
| 10/21/97 | 0.70 | Work on reply and preparation for hearing. | .35 |
| 10/22/97 | 2.40 | Review cases and work on reply. | 1.20 |
| 10/23/97 | 3.70 | Review cases; teleconference with D. Weber; work on reply brief; teleconference with B. Badke. | 1.85 |
| 10/24/97 | 8.30 | Drafting and editing reply papers; correspondence.[22] | 4.15 |
| 10/31/97 | 7.20 | Meetings with D. Weber, L. Ruggeri, J. Mitnick, J. Glick; research re: Rule 60(b) motion; teleconference with N. Aspinall. | 3.10 |
| 11/05/97 | 1.20 | Drafting argument and research. | .60 |
| 11/06/97 | 1.50 | Legal research; work on new submission; read case law. | .75 |
| 11/10/97 | .90 | Legal research; conference with A. Lippman. | .45 |

**20.** The Appendix reflects Plaintiffs' counsel's entries as they appear in their Affidavit in Support of Application for Attorneys' Fees.

**21.** Defendants submitted their cross-motion to dissolve the Consent Order on October 20, 1997, along with their brief in opposition to Plaintiffs' motion for contempt. Therefore, the Court shall disallow the hours Plaintiffs' counsel spent reviewing Defendants' opposition papers which pertained to Defendants' cross-motion to dissolve the Consent Order.

**22.** Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Contempt includes a section in opposition to Defendants' cross-motion to dissolve the Consent Order.

Paul V. LiCalsi

| Date | Hours Billed | Description | Hours Deducted |
|---|---|---|---|
| 11/17/97 | 1.50 | Conference with A. Lippman re: new submissions re: ethics issues; teleconference with D. Weber; review documents. | .75 |
| 11/18/97 | 2.80 | Work on papers re: ethical issues; conference with A. Lippman; work on cross-examination. | 1.40 |
| 11/19/97 | 1.80 | Review new motion by Defendants for sanctions; work on response. | 1.80 |
| 11/21/97 | 3.40 | Review motion papers for argument; attention to new exhibits; prepare for hearing. | 1.70 |
| 12/15/97 | 1.00 | Review reply on ICS motion for sanctions. | 1.00 |
| 01/07/98 | 2.20 | Work on exhibits and Tilson cross-examination.[23] | 1.10 |
| 01/08/98 | 1.30 | Conference with AL; outline argument. | .65 |
| 01/09/98 | 5.30 | Work on argument and prepare for hearing. | 2.75 |
| 01/10/98 | 5.30 | Prepare argument. | 2.75 |
| 01/12/98 | 7.00 | Prepare for hearing and argument. | 3.50 |
| 01/13/98 | 7.00 | Hearing in federal court. | 2.0 |
| 01/15/98 | 1.80 | Work on Findings of Fact and Conclusions; conference with AL. | .90 |
| 01/21/98 | 1.80 | Conference with AL; review transcript of last hearing date. | .90 |
| 01/22/98 | 1.80 | Review transcript; work on Findings of Fact. | .90 |
| 01/26/98 | 2.10 | Review transcript; work on Findings of Fact. | 1.05 |
| 01/27/98 | .80 | Work on Findings of Fact; conference with AL. | .40 |
| 01/30/98 | 1.80 | Work on Findings of Fact. | .90 |
| 02/09/98 | 1.30 | Findings of Fact and Conclusions of Law. | .65 |
| 02/10/98 | 3.30 | Drafting and revising Findings of Fact and Conclusions of law. | 1.15 |
| 02/11/98 | 6.80 | Drafting and revising Findings of Fact and Conclusions of law; research. | 3.40 |
| 02/12/98 | 5.30 | Work on Findings and Conclusions; research; correspondence. | 2.65 |
| 02/14/98 | 1.00 | Reviews ICS' Proposed Findings and Conclusions. | .50 |

**23.** Part of defendant Tilson's cross-examination focused on Defendants' cross-motion to dissolve the Consent Order.

Paul V. LiCalsi

| Date | Hours Billed | Description | Hours Deducted |
|---|---|---|---|
| 02/17/98 | .60 | Conference with AL and attention to ICS' Findings and Conclusions. | .30 |
| 02/23/98 | .30 | Teleconference with Weber; conference with AL re: Findings of Fact. | .15 |
| 03/06/98 | .50 | Review correspondence; telephone conference with Aspinall. | .25 |
| 04/01/98 | .50 | Review Michaels decision; correspondence with Judge Greenaway. | .50 |
| 04/03/98 | 1.70 | Prepare for argument. | .85 |
| 04/05/98 | 2.50 | Reviewing Plaintiffs' and Defendants' Findings of Fact in preparation for argument. | 1.25 |
| 04/06/98 | 4.90 | Reviewing transcripts and exhibits; review correspondence from Badke to Court; review legal arguments and case law. | 2.45 |
| 04/07/98 | 6.20 | Preparation for argument; appearance and argument before Judge Greenaway. | 3.10 |
| 04/08/98 | .50 | Conference with Neil Aspinall re: hearing. | .50 |
| 04/20/98 | .30 | Draft letter to Judge Greenaway's chambers. | .15 |
| 04/30/98 | .70 | Teleconference with court; conference with AL. | .35 |
| 05/01/98 | .40 | Teleconference with Judge Greenaway's chambers; teleconference with Aspinall. | .20 |
| 05/29/98 | 1.00 | Teleconference with Judge Greenaway and Badke; review order; teleconference with AJL. | .50 |
| 06/01/98 | 2.80 | Conference with AJL; reviewing case re: Rule 60; appeal; develop settlement proposal; teleconferences with Shukat and Weber. | 1.40 |
| 06/03/98 | 4.60 | Prepare for and appear at conferences with Judge Greenaway. | 2.30 |
| 06/26/98 | 1.70 | Teleconferences with Judge Greenaway's chambers, Dorothy Weber, Peter Shukat; review opinion. | .85 |

Hours deducted as not expended in connection with contempt motion: *62.75*

Hours deducted as unnecessary: *2*

Hours deducted as excessive: *51*

Total hours deducted = *115.75*

Requested hours: *248* MINUS hours deducted *115.75* = *132.25*

Hours reasonably expended: *132.25* multiplied by hourly rate: *$280*

Attorneys' fees awarded to Paul V. LiCalsi: *$37,030.00*

*Jane G. Stevens*

Total hours deducted = *0*

Requested hours: *.30* hours multiplied by hourly rate: *$280*

Attorneys' fees awarded to Jane G. Stevens: *$84.00*

Requested hours: *.80* hours MINUS hours deducted: *.80* = 0

Attorneys' fees awarded to Martin R. Gold: *$ 0*

*Martin R. Gold*

Total hours deducted = *.80*

Amy J. Lippman

| Date | Hours Billed | Description | Hours Deducted |
|---|---|---|---|
| 10/20/97 | 6.00 | Reviewed Defendants' papers; began outlining and drafting reply papers; conference re: same. | 3.00 |
| 10/21/97 | 11.00 | Drafting reply papers. | 5.50 |
| 10/22/97 | 9.50 | Drafting reply papers. | 4.75 |
| 10/23/97 | 10.00 | Drafting reply papers. | 5.00 |
| 11/01/97 | 7.00 | Legal research and review of cases in connection with Defendants' supplemental brief.[24] | 7.00 |
| 11/19/97 | 2.00 | Review of Defendants' motion for sanctions. | 2.00 |
| 11/20/97 | 9.50 | Draft response to motion for sanctions. | 9.50 |
| 11/21/97 | 9.50 | Prepare for hearing, meetings with Rector and Christopher; organization of exhibits. | 3.00 |
| 01/05/98 | 1.50 | Reviewed reply papers.[25] | 1.50 |
| 01/06/98 | 6.00 | Drafting Findings of Fact and Conclusions of Law. | 3.00 |
| 01/07/98 | 5.00 | Findings of Fact. | 2.50 |
| 01/08/98 | 5.00 | Letter brief to Judge.[26] | 5.00 |
| 01/09/98 | 2.00 | Outlined legal arguments. | 1.00 |
| 01/15/98 | 3.00 | Conference with PVL re: Findings and Conclusions. | 1.50 |
| 01/21/98 | 6.00 | Findings of Fact and Conclusions of Law. | 3.00 |
| 01/22/98 | 8.00 | Findings of Fact and Conclusions of Law. | 4.00 |
| 01/26/98 | 6.00 | Findings of Fact. | 3.00 |
| 01/27/98 | 8.00 | Findings of Fact. | 4.00 |
| 01/28/98 | 9.50 | Findings of Fact. | 4.75 |

**24.** Ms. Lippman was referring to Defendants' Memorandum of Law in Further Support of Defendants' Cross–Motion for Rescission of the Consent Order.

**25.** Ms. Lippman was referring to Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Sanctions.

**26.** This was a letter brief in opposition to Defendants' motion for sanctions.

Amy J. Lippman

| Date | Hours Billed | Description | Hours Deducted |
|---|---|---|---|
| 01/29/98 | 8.80 | Findings of Fact. | 4.40 |
| 02/02/98 | 6.00 | Findings of Fact. | 3.00 |
| 02/03/98 | 8.00 | Findings of Fact. | 4.00 |
| 02/04/98 | 8.00 | Findings of Fact. | 4.00 |
| 02/05/98 | 9.00 | Findings of Fact. | 4.50 |
| 02/17/98 | 4.50 | Reviewed Defendants' and Plaintiffs' Findings of Fact. | 2.25 |
| 02/23/98 | 2.50 | Reviewed Findings of Fact. | 1.25 |
| 02/24/98 | 2.00 | Reviewed Defendants' Findings of Fact. | 1.00 |
| 02/26/98 | 1.00 | Attention to Defendants' Findings of Fact. | .50 |
| 03/03/98 | .80 | Reviewed order; letter to Badke. | .80 |
| 03/10/98 | 1.00 | Reviewed Defendants' Proposed Findings. | .50 |
| 04/06/98 | 3.00 | Prepare for hearing. | 1.50 |
| 06/02/98 | 3.50 | Conference with PVL re: court conference; preparation for same. | 1.75 |
| 06/03/98 | 5.00 | Court conference; legal research re: attorneys' fees. | 2.50 |
| 06/29/98 | 2.50 | Reviewed order; correspondence to Badke; conferences with PVL. | 1.25 |

Hours deducted as not expended in connection with contempt motion: *106.2*

Hours deducted as unnecessary: *9.5*

Hours deducted as excessive: *67*

Total hours deducted = *182.7*

Requested hours: *438.4* MINUS hours deducted *182.7* = 255.7

Hours reasonably expended: *255.7* multiplied by hourly rate: *$190*

Attorneys' fees awarded to Amy J. Lippman: ***$48,583.00***

Jeannie Costello

| Date | Hours Billed | Description | Hours Deducted |
|---|---|---|---|
| 10/21/97 | 7.90 | Research regarding reply brief. | 3.95 |
| 10/24/97 | 4.90 | Review of cases re: ethical obligations; research re: repudiation/termination cases. | 2.45 |

Hours deducted as not expended in connection with contempt motion: *6.4*

Hours deducted as unnecessary: *0*

Hours deducted as excessive: *14.5*

Total hours deducted = *20.9*

Requested hours: *35.8* MINUS hours deducted: *20.9 = 14.9*

Hours reasonably expended: *14.9* multiplied by hourly rate: *$170*

## Howard Weller

| Date | Hours Billed | Description | Hours Deducted |
|------|-----|-------------|----------------|
| 10/21/97 | 1.00 | Edit reply brief. | .50 |

Hours deducted as not expended in connection with contempt motion: *.5*

Hours deducted as unnecessary: *0*

Hours deducted as excessive: *6*

Total hours deducted = *6.5*

Requested hours: *18.9* MINUS hours deducted: *6.5 = 12.4*

Hours reasonably expended: *12.4* multiplied by hourly rate: *$175*

## Sari L. Harris

| Date | Hours Billed | Description | Hours Deducted |
|------|-----|-------------|----------------|
| 11/05/97 | .50 | Search and printout of ethics opinion per A. Lippman. | .50 |
| 11/13/97 | 1.00 | Westlaw search for ethics opinions; completed arrangements with N.Y. Bar Library re: archived ethics opinions via facsimile. | 1.00 |
| 11/17/97 | 1.00 | Communication with the Oregon state bar and Alabama state bar re: receiving ethics opinions. | 1.00 |
| 11/19/97 | 2.00 | Case pull of cites in Defendants' brief. | 2.00 |
| 11/20/97 | 4.50 | Assist in preparation of Plaintiffs' Opposition to Sanctions and Affidavit of Legal Services. | 4.50 |

Hours deducted as not expended in connection with contempt motion: *9*

Hours deducted as unnecessary: *9*

Hours deducted as excessive: *0*

Total hours deducted = *18*

Requested hours: *162.6* MINUS hours deducted: *18 = 144.6*

Hours reasonably expended: *144.6* multiplied by hourly rate: *$75* ·

Attorneys' fees awarded to Jeannie Costello: **$2,533.00**

Attorneys' fees awarded to Howard Weller: **$2,170.00**

*Michael D. Manuelian*

Total hours deducted = *0*

Requested hours: *1.8* MINUS hours deducted: *0 = 1.8*

Hours reasonably expended: *1.8* multiplied by hourly rate: *$175*

Attorneys' fees awarded to Michael D. Manuelian: **$315.00**

Attorneys' fees awarded to Sari L. Harris: **$10,845.00**

*Mark B. Fallon*

Total hours deducted = *0*

Requested hours: *21.3* MINUS hours deducted: *0 = 21.3*

Hours reasonably expended: *21.3* multiplied by hourly rate: *$75*

Attorneys' fees awarded to Mark B. Fallon:
*$1,597.50*

Tina Leos Termine

| Date | Hours Billed | Description | Hours Deducted |
|------|------|------|------|
| 01/15/98 | 2.00 | Digesting D. Weber. Conference with A. Lippman. | 1.00 |
| 01/16/98 | 2.00 | Digesting hearing transcriptions. | 1.00 |

Hours deducted as not expended in connection with contempt motion: *2*

Hours deducted as unnecessary: *0*

Hours deducted as excessive: *0*

Total hours deducted = *2*

Requested hours: *8* MINUS hours deducted: *2 = 6*

Hours reasonably expended: *6* multiplied by hourly rate: *$80*

Attorneys' fees awarded to Tina Leos Termine: *$480.00*

### *Shukat, Arrow, Hafer & Weber, L.L. P.*

Dorothy Weber

| Date | Hours Billed | Description | Hours Deducted |
|------|------|------|------|
| 10/22/97 | 2.00 | Prepared memorandum with responses. | 1.00 |
| 10/22/97 | 1.75 | Re: IGPC sale, conference J. Herbsman; correspondence with OPA, P. LiCalsi, A. Lippman, B. Badke. | 1.00 |
| 10/29/97 | .25 | Re: IGPC; conference with J. Herbsman. | .25 |
| 11/12/97 | .25 | Correspondence with P. LiCalsi. | .15 |
| 11/18/97 | 1.00 | Prepare draft correspondence to J. Badke. | .50 |
| 11/19/97 | .25 | Correspondence to P. LiCalsi. | .15 |
| 11/19/97 | .50 | Revise correspondence to Badke; telephone conversation with LiCalsi. | .25 |
| 02/23/98 | 1.00 | Review response; telephone conversation with Lippman and LiCalsi. | .50 |

*Dorothy Weber*

Hours deducted as not expended in connection with contempt motion: *3.8*

Hours deducted as unnecessary: *35.5*

Hours deducted as excessive: *0*

Total hours deducted = *39.3*

Requested hours: *57.25* MINUS hours deducted: *39.3 = 17.95*

Hours reasonably expended: *17.95* multiplied by hourly rate: *$225*

Attorneys' fees awarded to Dorothy Weber: *$4,038.75*

Jonas E. Herbsman

| Date | Hours Billed | Description | Hours Deducted |
|------|------|------|------|
| 10/21/97 | .25 | Telephone conversation with L. Ostrow.[27] | .25 |
| 10/27/97 | 1.0 | Telephone conversations L. Ostrow, (2) Amy Lippman; correspondence to B. Badke. | .50 |

Hours deducted as not expended in connection with contempt motion: .75

Hours deducted as unnecessary: 0

Hours deducted as excessive: 0

Total hours deducted = .75

Requested hours: 2.25 MINUS hours deducted: .75 = 1.5

Hours reasonably expended: 1.5 multiplied by hourly rate: $140

Attorneys' fees awarded to Jonas E. Herbsman: **$210.00**

### Shapiro & Croland

David O. Marcus

| Date | Hours Billed | Description | Hours Deducted |
|------|------|------|------|
| 11/17/97 | .60 | Telephone conference with client re: ethics report; research ethics reports; and fax to client. | .60 |
| 11/20/97 | 1.00 | Two conferences with Amy Lippman; review papers submitted to court; review ethics rules and prepare fax to her. | .50 |
| 01/08/98 | .35 | Review letter brief in opposition to motion for sanctions; telephone conference with co-counsel. | .35 |
| 03/05/98 | .50 | Review correspondence to the court and correspondence to adversary. | .25 |
| 03/05/98 | 1.00 | Review brief of adversary and our brief. | .50 |

Hours deducted as not expended in connection with contempt motion: 2.2

Hours deducted as unnecessary: 23.50

Hours deducted as excessive: 0

Total hours deducted = 25.7

Requested hours: 33.9 MINUS hours deducted: 25.7 = 8.2

Hours reasonably expended: 8.2 multiplied by hourly rate: $190

Attorneys' fees awarded to David O. Marcus: **$ 1,558.00**

### EXPENSES
### Gold, Farrell & Marks

| | Amount Requested | Amount Awarded |
|------|------|------|
| Computerized legal research: | $ 5,486.31 | $ 1,371.58 |
| Duplicating costs: | $ 5,077.04 | $ 1,269.26 |
| Delivery charges: | $ 880.49 | $ 220.12 |
| Meals & Fares: | $ 2,257.84 | $ 225.78 |
| Overtime for non-legal staff: | $ 1,235.97 | $0 |

27. The Court is unable to determine how much time was devoted to the conversations with the unidentified L. Ostrow. Therefore, the Court will disallow .75 hours.

| | Amount Requested | Amount Awarded |
|---|---|---|
| Investigative costs: | $14,198.63 | $14,198.63 |
| Expert fees: | $ 4,000.00 | $ 4,000.00 |
| Miscellaneous: | $ 175.30 | $0 |
| Total: | $33,311.58 | **$21,285.37** |

*Shukat, Arrow, Hafer & Weber, L.L. P.*

| | Amount Requested | Amount Awarded |
|---|---|---|
| Car Services: | $437.15 | $109.29 |
| Total: | $437.15 | **$109.29** |

*Shapiro & Croland*

| | Amount Requested | Amount Awarded |
|---|---|---|
| Court reporting costs: | $ 785.00 | $785.00 |
| Duplicating costs: | $ 56.70 | $ 14.18 |
| Delivery charges: | $ 147.70 | $ 36.93 |
| Tolls and Parking: | $ 24.28 | $0 |
| Fax and telephone: | $ 39.00 | $0 |
| Miscellaneous: | $ 12.95 | $0 |
| Total: | $1,065.63 | **$836.11** |